IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

PARRIS HAMILTON, :
:
          Petitioner, :
:
   v. :   Civil Action No. 17-1230-CFC
:
ROBERT MAY, Warden, and :
ATTORNEY GENERAL OF THE :
STATE OF DELAWARE, :
:
          Respondents.[1] :

---

Parris Hamilton. *Pro se* Petitioner.

Brian L. Arban, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware. Attorney for Respondents.

---

**MEMORANDUM OPINION**[2]

September 30, 2020
Wilmington, Delaware

---

[1] Warden Robert May has replaced former Warden Dana Metzger, an original party to this case. *See* Fed. R. Civ. P. 25(d).

[2] This case was originally assigned to the Honorable Gregory M. Sleet, and was re-assigned to the undersigned judge on September 20, 2018.

*[signature]*
CONNOLLY, UNITED STATES DISTRICT JUDGE:

Pending before the Court is Petitioner Parris Hamilton's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition"). (D.I. 1) The State filed an Answer in opposition. (D.I. 11) For the reasons discussed, the Court will deny the Petition.

## I.  BACKGROUND

> For one month in 2009, [Petitioner] lived with Crystal Moody ("Crystal") and her sons Christopher and Tyrone in Wilmington. Crystal leased the property solely in her name. But the cable, internet, and telephone bill was in [Petitioner's] name. During that time, Crystal and [Petitioner's] relationship was rocky, due in part to [Petitioner's] failure to contribute to the household expenses. At the end of the month, Crystal insisted that [Petitioner] move out. He did so willingly, leaving behind several personal items including a Sony Playstation.
>
> [Petitioner] tried to reconcile his relationship with Crystal, but she continually refused [his] efforts. On the day of the shootings, [Petitioner] made several phone calls to Crystal's house, asking to come over. Crystal refused his request because he was drunk. Several hours later, [Petitioner] came over nonetheless, and one of Crystal's sons let him in the house. Crystal and Tyrone asked [Petitioner] to leave multiple times, but [Petitioner] insisted that he wanted to get his Playstation first. Christopher went upstairs to get the Playstation. When Christopher came back downstairs, he saw [Petitioner] push Crystal down onto the steps. [Petitioner] then shot Tyrone, Christopher, and Crystal multiple times each. Crystal and Christopher survived the shooting, but Tyrone died from his injuries.
>
> [Petitioner] was arrested and charged in the [Delaware] Superior Court with two counts of first degree murder, two counts of attempted murder first degree, two counts of first degree kidnapping, one count of first degree burglary, and seven counts of PFDCF. At trial, Petitioner presented a defense of Extreme Emotional Distress (EED), due to ongoing

> personal matters and the recent death of his grandmother. The State presented testimony from Dr. David E. Raskin, who testified that because [Petitioner] was voluntarily intoxicated on the night of the crimes, he was precluded from raising the defense of EED. Promising that he would give the jury an instruction on the law later, the trial judge explained that Dr. Raskin was only testifying to his understanding of the defense from his position as a psychiatrist. On cross examination, [Petitioner] elicited additional testimony from Dr. Raskin that an EED defense is precluded by voluntary intoxication. The trial court later instructed the jury that a defendant is not necessarily precluded from asserting an EED defense by virtue of being voluntarily intoxicated. The jury convicted [Petitioner] on all charges. [Petitioner] then filed a Motion for Judgment of Acquittal, which was denied. The trial court sentenced Petitioner to four life sentences plus fifty-five years at Level V supervision, suspended after fifty-one years.

*Hamilton v. State*, 82 A.3d 723, 725–26 (Del. 2013). The Delaware Supreme Court affirmed Petitioner's convictions and sentences on December 9, 2013. *Id.* at 728.

In October, 2014, Petitioner filed a *pro se* motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion") asserting ten grounds for relief. (D.I. 11 at 2; D.I. 12-10 at 32-74) The Superior Court appointed counsel to represent Petitioner in his Rule 61 proceeding. (D.I. 12-1 at 20-21) In August 2015, postconviction counsel filed a motion to withdraw from representing Petitioner pursuant to Delaware Superior Court Criminal Rule 61(e)(6), stating that they had examined Petitioner's grounds for relief and were unable to ethically advocate any of them and that that they were unable to assert any other meritorious postconviction claims. (D.I. 12-1 at 22; D.I. 12-14) Postconviction counsel sent Petitioner a copy of the motion to withdraw and informed Petitioner that he had thirty days to add any points for the Superior Court's consideration. (D.I. 12-14 at 1) In September 2015, Petitioner

3

opposed postconviction counsel's motion to withdraw but did not provide any new grounds for his Rule 61 motion. (D.I. 12-17) In March 2016, the Superior Court granted counsel's motion to withdraw and denied Petitioner's Rule 61 motion, finding that the claims raised in his original *pro se* Rule 61 motion were either procedurally barred or meritless. *See Hamilton*, 2016 WL 807729, at *2–*5 (Del. Super. Ct. Mar. 1, 2016). Petitioner filed a *pro se* appeal raising only one claim. That claim did not relate to any of the claims in his *pro se* Rule 61 motion. *See Hamilton v. State*, 2017 WL 2807952, at *2 (Del. Jun. 28, 2017). The Delaware Supreme Court rejected Petitioner's sole claim and affirmed the Superior Court's decision in June 2017. *See Hamilton v. State*, 2017 WL 2807952, at *3.

Petitioner filed the instant habeas Petition in August 2017. (D.I. 1)

## II.     GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Additionally, AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

4

## B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1). This exhaustion requirement, based on principles of comity, gives "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *see Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000).

A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *See Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples,* 489 U.S. 346, 351 (1989). If the petitioner raised the issue on direct appeal in the correct procedural manner, the claim is exhausted and the petitioner does not need to raise the same issue again in a state post-conviction proceeding. *See Lambert v. Blackwell,* 134 F.3d 506, 513 (3d Cir. 1996).

5

If a petitioner presents unexhausted habeas claims to a federal court, and further state court review of those claims is barred due to state procedural rules, the federal court will excuse the failure to exhaust and treat the claims as exhausted. See Coleman v. Thompson, 501 U.S. 722, 732, 750-51 (1991) (such claims "meet[] the technical requirements for exhaustion" because state remedies are no longer available); see also Woodford v. Ngo, 548 U.S. 81, 92-93 (2006). Such claims, however, are procedurally defaulted. See Coleman, 501 U.S. at 749; Lines v. Larkins, 208 F.3d 153, 160 (3d Cir. 2000). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. See Coleman, 501 U.S. at 750; Harris v. Reed, 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. See McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999); Coleman, 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show that the errors during his trial created more than a possibility of prejudice; he must show that

the errors worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent,"[3] then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496. A petitioner establishes actual innocence by asserting "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004).

## III. DISCUSSION

Petitioner asserts four Claims in his timely-filed Petition: (1) defense counsel provided ineffective assistance during the trial by not objecting to the admission of the allegedly involuntary statements Petitioner made to Dr. Raskin while under the influence of psychotropic medication; (2) defense counsel provided ineffective assistance during the trial and on direct appeal by not objecting that the jury was biased because the summons sent to potential jurors incorrectly stated that Petitioner's case was a capital

---

[3]*Murray*, 477 U.S. at 496.

case; (3) defense counsel provided ineffective assistance during the trial by failing to object to Dr. Raskin being allowed to evaluate Petitioner for a second time without counsel being present; and (4) defense counsel provided ineffective assistance during the trial and on direct appeal by not raising double jeopardy violations based upon Petitioner's convictions and sentence for multiple firearms offenses. (D.I. 1)

Petitioner presented these four ineffective assistance of counsel allegations contained Claims One, Two, Three, and Four to the Superior Court in his original *pro se* Rule 61 motion along with the related underlying substantive arguments (D.I. 12-15 at 54-96). He did not, however, present these ineffective assistance allegations or related substantive arguments to the Delaware Supreme Court on postconviction appeal. (D.I. 12-18) As a result, he has failed to exhaust state remedies for Claims One through Four.

At this juncture, any attempt by Petitioner to raise the Claims in a new Rule 61 motion would be barred as untimely under Delaware Superior Court Rule 61(i)(1) and as second or successive under Rule 61(i)(2). *See* Del. Super. Ct. Crim. R. 61(i)(1) (establishing a one-year deadline for filing Rule 61 motions); Del. Super. Ct. Crim. R. 61(i)(2) (providing that second or successive motions shall be summarily dismissed unless they meet the pleading requirements of Rule 61(d)(2)(i) or (ii)). Claims One through Four are therefore procedurally defaulted and the Court cannot review the merits of the Claims absent a showing of either cause and prejudice or that a miscarriage of justice will result absent such review.

8

Petitioner attempts to establish cause by asserting that the default was caused by the ineffective assistance of his post-conviction counsel because they withdrew their representation during the Rule 61 proceeding instead of briefing the instant four ineffective assistance of counsel Claims that he presented in his original *pro se* Rule 61 motion. To the extent Petitioner premises this attempt to demonstrate cause under *Martinez v. Ryan*, 566 U.S. 1 (2012), the argument is unavailing. In *Martinez*, the Supreme Court held for the first time that inadequate assistance of counsel during an initial-review state collateral proceeding may establish cause for a petitioner's procedural default of a claim of ineffective assistance of trial counsel. *Id.* at 16-17. In order to obtain relief under *Martinez*, a petitioner must demonstrate that the state post-conviction attorney in his first state collateral proceeding was ineffective under the standards established in *Strickland*, that the underlying ineffective assistance of trial counsel claim is substantial, and that petitioner was prejudiced. *Id.* at 9-10, 16-17. A "substantial" ineffective assistance of trial counsel claim is one that has "some" merit" which, given the *Martinez* Court's citation to *Miller-El v. Cockrell*, 537 U.S. 322 (2003), appears to be governed by the standards applicable to certificates of appealability. *Id.* at 13-14. Significantly, however, the *Martinez* Court explicitly limited its rule, stating that the "holding in this case does not concern errors in other kinds of proceedings, **including appeals from initial-review collateral proceedings.**" *Id.* at 16 (emphasis added). As the Court explained: "[w]hile counsel's errors in these [other kinds of] proceedings preclude any further review of the prisoner's claim, the claim will have been

addressed by one court, whether it be the trial court, the appellate court on direct review, or the trial court in an initial-review collateral proceeding." *Id.* at 11.

Here, Petitioner presented the instant four ineffective assistance of trial counsel allegations to the Superior Court in his initial *pro se* Rule 61 motion. The Superior Court addressed and reviewed the ineffective assistance argument in Claim One and denied it as meritless. The Superior Court also addressed (and rejected as both procedurally barred and meritless) the substantive arguments underlying Claims Two, Three, and Four, but did not directly review the ineffective assistance of counsel allegations set forth in those Claims. More relevant for the instant analysis, however, is the fact that Petitioner did not present the ineffective assistance of counsel allegations set forth in Claims One, Two, Three, and Four to the Delaware Supreme Court in his postconviction appeal. In other words, Claims One through Four are defaulted because Petitioner failed to present the Claims to the Delaware Supreme Court on postconviction appeal, not because postconviction counsel failed to brief the claims during the initial Rule 61 proceeding.

To the extent Petitioner implicitly argues that postconviction counsel's withdrawal from representation and failure to brief the instant four Claims during the initial postconviction proceeding constituted an abandonment excusing his default, he is also mistaken. Postconviction counsel informed Petitioner that they were moving to withdraw from representation, and they proceeded to withdraw pursuant to established court procedures with the permission of the Superior Court. *C.f. Maples v. Thomas*, 132 S.Ct. 912 (2012) (finding that postconviction counsel's abandonment of petitioner

10

without warning or leave of court—which caused petitioner to miss the deadline to file a postconviction appeal—constituted cause to excuse the petitioner's procedural default). Accordingly, *Martinez*'s limited exception is inapplicable to Petitioner's case and cannot be used to excuse Petitioner's default of Claims One, Two, Three, and Four.[5]

---

[5]The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688. Even if *Martinez* were not inapplicable for the aforementioned reasons, *Martinez* would not provide cause for Petitioner's default because the instant four ineffective assistance of trial counsel Claims are not substantial for these reasons:

1. Claim One: Petitioner does not provide any support for his contention that his statements to Dr. Raskin were involuntary. His bald and conclusory allegations are insufficient to establish trial counsel's ineffectiveness for not objecting to the statements Petitioner made to Dr. Raskin as being involuntary.

2. Claim Two: As the Delaware Supreme Court noted in Petitioner's postconviction appeal, "[a]lthough the initial [jury] panel for [Petitioner's] trial was sent a letter on May 15, 2012, stating that the case was capital case, that panel was not used for trial. Instead, at Trial Counsel's request, [Petitioner's] trial was delayed [and] a new jury panel was selected on May 17, 2012." *Hamilton*, 2016 WL 807729, at *3. Since the jury in Petitioner's proceeding did not receive the letter referring to his case as a capital case, defense counsel did not provide ineffective assistance during the trial or on direct appeal by failing to raise a meritless objection that the jury was biased by a jury summons jurors did not receive.

3. Claim Three: As the Superior Court noted when denying Petitioner's Rule 61 motion, defense counsel requested to attend Petitioner's mental health evaluation with Dr. Raskin, but the trial court denied the request because it concluded that mental health evaluations are best conducted without outside influence. *See Hamilton*, 2016 WL 807729, at *4. Petitioner has not

11

The absence of cause eliminates the need to address prejudice. In addition, the miscarriage of justice exception to the procedural default doctrine is inapplicable to excuse Petitioner's default because Petitioner has not provided any new reliable evidence of his actual innocence. Accordingly, the Court will deny Claims One, Two, Three, and Four as procedurally barred from federal habeas review.

## IV. EVIDENTIARY HEARING

Petitioner asks the Court to hold an evidentiary hearing. Typically, requests for an evidentiary hearing in a federal habeas proceeding are evaluated under 28 U.S.C. § 2254(e), which provides:

> (1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

---

demonstrated, and the Court has not discovered, any authority establishing a defendant's right to have counsel physically present at a mental health evaluation. Without a legal basis for defense counsel's request to be present during the mental health evaluation, Petitioner's argument concerning defense counsel's alleged ineffectiveness lacks merit.

4. Claim Four: The Double Jeopardy Clause prohibits "multiple punishments for the same offense." *Ohio v. Johnson*, 467 U.S. 493, 498 (1984). Petitioner argues that defense counsel should have contended during the trial and on direct appeal that Petitioner was convicted of and sentenced for multiple firearm offenses arising out of the same occurrence in violation of the double jeopardy clause. But Petitioner was not punished multiple times for the same offense. Rather, he was convicted of multiple crimes involving firearms—two counts of first degree murder (with a firearm), two counts of attempted murder first degree (with a firearm), two counts of first degree kidnapping (with a firearm), one count of first degree burglary (with a firearm)—and was appropriately sentenced for the multiple crimes pursuant to Delaware law.

12

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that
>
>> (A) the claim relies on –
>>
>>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>>
>>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>>
>> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). In cases where a petitioner is not barred from obtaining an evidentiary hearing under § 2254(e)(2), the decision to grant a hearing rests in the discretion of the court. *See Palmer v. Hendricks*, 592 F.3d 386, 393 (3d Cir. 2010); *see also Lee v. Glunt*, 667 F.3d 397, 406 (3d Cir. 2012). When deciding whether to grant a hearing, the "court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations," taking into consideration the "deferential standards prescribed by 28 U.S.C. § 2254." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). Additionally, the Third Circuit has held that a district court has discretion to grant an evidentiary hearing to evaluate if a petitioner's procedural default may be excused. *See Goldblum v. Klem*, 510 F.3d 204, 221 (3d Cir. 2007); *Cristin v. Brennan*, 281 F.3d 404, 416-17 (3d Cir. 2002).

Here, where Petitioner has not provided a reason for the Court to question its determination that Petitioner's habeas claims are procedurally barred, Petitioner's single-sentence request for a hearing fails to provide a sufficient basis to hold an evidentiary hearing under § 2254(e)(2). (D.I. 1 at 15) Therefore, the Court will deny Petitioner's request for an evidentiary hearing.

## V. CERTIFICATE OF APPEALABILITY

The Court must decide whether to issue a certificate of appealabilty. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability may be issued only when a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This showing is satisfied when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). If a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *See Slack,* 529 U.S. at 484.

The Court has concluded that the instant Petition fails to warrant federal habeas relief, and is persuaded that reasonable jurists would not find this conclusion to be debatable. Therefore, the Court will not issue a certificate of appealability.

## VI. CONCLUSION

For the foregoing reasons, the Court will deny the instant Petition without an evidentiary hearing. The Court will enter an Order consistent with this Memorandum Opinion.